and call the second case of this morning. Number 17-1591, Sowers v. Borough of Nesquehoning. Mr. Autry and Mr. Kepchick. Take your time setting up. Your Honor, Mr. Autry, for Officer Jomenko and I would like to reserve two minutes for rebuttal. Yes, sir. Your Honor, for Officer Jomenko, we consider this issue quite simple. The district court did not do what it needed to do on the qualified immunity analysis. The qualified immunity issue is one that has been of substantial importance to the Supreme Court. The Supreme Court has taken 16 qualified immunity cases in a row over the last 10 years, and in each case they found the right not clearly established. They have been sending a strong signal to this court and to the lower courts that you cannot define the right in a general way. You have to look at it in a particularized sense, and you have to look at it specifically. What did Officer Jomenko plead guilty to? He pled guilty to negligent homicide by vehicle, Your Honor. Wouldn't it have been clearly established at that time that that kind of conduct exposes you to liability? Your Honor, to a state negligence tort. But wasn't it more than that? Didn't he also plead guilty to reckless conduct? He did, Your Honor, and recklessness is an element of the state criminal offense for negligent homicide. But that is not what the Supreme Court has said gives to liability under the Due Process Clause. The Supreme Court has specifically said that in a pursuit case, recklessness is not conscience-shocking. They've said that you need an intent of harm to lose this. If it's a pursuit case, did the yellow neon know they were being chased? Your Honor, I don't know that's not what's in the complaint. We're stuck to the complaint, but the complaint says it's a pursuit case. In Paragraph 14 of the complaint, it says it's a high-speed pursuit. And the Supreme Court specifically held in Sacramento v. Lewis that in a pursuit case, recklessness doesn't cut it, and the district court went lower. When you say recklessness doesn't cut it, doesn't that ignore our Sanford line of cases where we're talking very clearly about behavior in three different contexts, time contexts, time to deliberate, emergency, and then a midpoint? So when Judge Van Aske asks you about recklessness, isn't it the case, and clearly established in this circuit for sure, that if you're in that midpoint where you have some time to deliberate and you're behaving recklessly, that that can be conscience-shocking? Your Honor, it's clearly established that it can be, but this Court has not limited the specific holding in Sacramento v. Lewis as to pursuit cases. This Court has not said that in a pursuit case that Sacramento v. Lewis didn't mean what it says. The Supreme Court in Sacramento specifically talked about the two ends of the spectrum, and it held that pursuit cases fall on one end of it. Well, that depends on, I guess, our going with the label, that you're appending to it that all pursuit cases are the same. Like, you could have a pursuit case where you see something and there's no time to react except to pursue. Or you could have a case like this, where Officer Homlenko sees a summary traffic offense, rode radios ahead, so clearly he's got time to think about it, contacts somebody, says, hey, stop the person, and then only then decides, I'm going to drive 110 miles an hour to go after somebody for, I don't know, an illegal lane change. I mean, is it really the case that Sacramento v. Lewis clearly establishes that that's okay? That you can be reckless in your oath? You can do that, and that's good, qualified immunity. Your Honor, I think you're asking the question backwards. It's not whether Sacramento v. Lewis clearly establishes that the officer did nothing wrong. It's whether the law was clearly established that the officer did something wrong. Ron, maybe I misunderstood you, because I thought you were saying it was pretty clear from Sacramento v. Lewis that in a pursuit, high-speed pursuit, that recklessness doesn't cut it and you're okay. Well, I believe that is the case, Your Honor, but there's a step one and a step two under the qualified immunity analysis. So we believe that under step one, there wasn't a constitutional violation under Sacramento v. Lewis. But we also believe that even if this Court finds that there is a constitutional violation, that this Court would be breaking new ground. Did you appeal the constitutional violation piece of this, or is the argument here limited to not clearly established? Your Honor, we are focusing on problem two. We are focusing on whether it was clearly established. Right, because I didn't see anywhere in any argument that the constitutional violation piece wasn't a given. Am I right about that? Your Honor, we are only focusing on the clearly established problem. But this Court has not limited that pursuit analysis. In addition, the Supreme Court has said when judges disagree on a constitutional issue, it's unfair to hold the official or the officer liable. In this case, we've cited a number of cases from other circuits that have specifically held that in any driving scenario, recklessness isn't enough. They held even in non-pursuit circumstances, even in non-emergency. In the Ruby case and the Hill case, that's 11th Circuit and 7th Circuit, those cases dealt with officers that just ran through traffic lights. They weren't pursuing anyone, and they hit somebody. And the Court said that that's not a constitutional violation. That doesn't shock the conscience. They didn't want to turn the due process element in the Constitution into a tort for any driving case where you could just say, oh, well, it wasn't a pursuit or it was time to deliberate. So the question really becomes just how egregious is the behavior, right? We were talking about conscience shock. You're looking at all the circumstances, and you're asking yourselves, essentially, is that really outrageous or not, right? So is there a material difference between running a traffic light, which is a bad thing to do, and driving at 110 miles an hour to get somebody who maybe made an illegal lane change? Your Honor, in both of those cases, the officers were going over 100 miles per hour, and those were also traffic violation cases. This Court's unlawful decision in Fagan was also a pursuit of a traffic violation, I believe, and that case involved an officer going at a fairly high rate of speed. And this Court clearly said in Fagan that the sort of custodial, the more deliberative cases, are different than pursuit cases categorically. And this Court has not limited that decision from Fagan. It's the deliberate, just the point you just made. The deliberative point is essential, right? If you've got time to deliberate, if you've got time to make a phone call or radio call and say, hey, you want to stop this car? They made an illegal lane change. I'd like to talk to them. If you've got time to do that, is that different than a case or material difference? For purposes of constitutional violation, that's a given. But for purposes of clearly established, is that, based on our Sanders line of case, does that say, yeah, that's different? If you can deliberate, you're in trouble if you do something reckless. Your Honor, I do believe it's different, and I believe it's different for the reasons announced by the Supreme Court in Lewis. When the Supreme Court in Lewis was comparing its custodial line cases for inmates versus the pursuit context, it said that in the custodial context, you have time for repeated reflection, quote, extended opportunity to deliberate, quote, protracted failure, quote. And the court also said that in the custodial context, you're actually taking control of somebody versus a pursuit context. And this court specifically said in Fagan, we are not going to second-guess an officer's decision to pursue somebody under the substantive due process clause. And that's exactly what the plaintiff asked the court to do in this case. Now, if this court wants to say that Fagan's not good law anymore under Sanford, even though Fagan was an oddball and Sanford wasn't, that's this court's prerogative to go forward and say that in a pursuit case, Lewis doesn't mean that. Would we have to overrule Fagan, or could we say Sanford establishes a three-step look at officer behavior based on time to deliberate, and that's an elaboration which is not contrary to Fagan. It's just an elaboration of how we judge conscious, shocking behavior. There's a temporal aspect to it. Would we have to overrule Fagan if we were to look at this and say Sanford puts a gloss on this, and based on Sanford, this is clearly established? It would be carving out an exception to the pursuit rules announced in Fagan and Lewis. This court and the Supreme Court have specifically said that recklessness is not conscience-shocking in a pursuit context. Doesn't context matter when it's pursuit for a summary traffic offense, changing lanes? Your Honor, this court has not said that pursuit for a summary traffic offense gets you out of Lewis. Doesn't it seem conscience-shocking to you that a police officer would engage in a pursuit of over 100 miles an hour for somebody because they had changed lanes? Your Honor, I believe that specifically goes at reckless conduct. It doesn't show the intent to harm that the Supreme Court has said is so patently egregious, and not just the Supreme Court, the 11th Circuit, the 7th Circuit, the 6th Circuit, the 9th Circuit, and the 10th Circuit have all said that it doesn't matter if it's an emergency, it doesn't matter if it's a pursuit, that they were not going to extend a due process line of cases to a driving context. They're not going to say that reckless driving shocks the conscience. So you could have a circumstance, by your reasoning, Ben, Officer Hermunko could have gone home, made himself a sandwich, thought about it a little bit, gotten irritated that somebody would make that kind of a lane change, go back out, get in his cruiser, and drive 200 miles an hour through an elementary school parking lot, and that would be a pursuit and not a problem. Your Honor, I believe that that would be, get it to the ground, but it would certainly go beyond just pure recklessness to shoot a gun through a school guard. I don't think you would need a Supreme Court decision to say that that is a crime. Right, because at a certain point, the recklessness of the behavior and the minor character of the offense and the time to deliberate, that mix of things at a certain point leads you to say, I don't need a case right on point. I can look at this and say outrageous. Well, of course in the context of firing a gun recklessly. Listen to me. Based on what you just said, you seem to be agreeing that the temporal aspect, time to deliberate, the outrageousness or the recklessness of the kind of outstream it is, and the minoreness or the minor quality of the offense, those things all come together in sort of a totality and you measure them out and then you can say, look, at a certain point, I don't need a case that's right on all fours with this. I can look at this and say that's bad enough. Your Honor, that would be basically the Hope v. Pelletier line of Supreme Court cases on qualified immunity. That's the last Supreme Court case to do that. I believe that was a prison dehydration case where basically an inmate was left outside to starve and the Supreme Court said you don't need a judicial decision to say that that's wrong. It's so outrageous. And I think like shooting a gun into a playground or driving a car through a playground, you would basically know that the result would be substantially certain to happen. It wouldn't just be pure recklessness. And this Court and the Supreme Court have specifically said that recklessness isn't enough. And if this Court wants to say that it now is, that's qualified immunity. If this Court wants to say that there's going to be an exception going forward to the rule announced in Fagan, that the Supreme Court rule in Lewis doesn't go as far as it says it goes, it actually goes a little bit less than that, and that there's going to be an exception in this case, that the officer gets qualified immunity because it wasn't clearly established until this Court announces that decision six months from today. We've listed a number of decisions, both by circuit courts and by district courts, that have specifically held in the driving context in cases where officers were exceeding 100 miles per hour, in cases where it was alleged the officers had time to deliberate, in cases where it was alleged that it wasn't a pursuit at all, that the courts have said that does not trigger due process protections. It wasn't an intent to harm the Sacramento v. Lewis controls. If this Court wants to create a circuit split and say that those cases are wrong, that Sacramento v. Lewis doesn't go that far, that you can't have conjecture-shocking behavior, that someone falls at the high level of recklessness, then this Court should give the officer qualified immunity. But I will point out that the district court didn't say recklessness. The district court went with gross negligence, which this Court explicitly rejected, not only in Fagan, but also in Sanford. Even if that's true, Mr. Autry, all that says is that the district court was wrong in the label it put on it. But if we thought it was conjecture-shocking, since it's a legal decision, we could make that judgment, right? This Court can make that judgment that it violates the Constitution to reckless drive and limit Fagan and limit Lewis to that end. But again, the qualified immunity analysis is whether it was clearly established that there is that exception to Lewis before this Court announces that decision. Thank you, yours. Before you sit down, I'm just looking at Sanford. You say Sanford doesn't mention gross negligence. It says on page 310, we believe that gross negligence or arbitrariness that indeed shocks the conscious is a standard that while it provides little guidance, it nonetheless is if you've got time to deliberate. The more time you have to deliberate, the less you have to show as a plaintiff. So what's wrong with that? Sanford can't overrule Fagan. All it's doing is going on to the next case. Well, gross negligence didn't come from Fagan. Fagan actually rejected the recklessness in this context. The Sanford gross negligence analysis starts out by saying gross negligence is something that we've recognized as this Court in that intermediary column, that mid-level. But then Sanford goes on, as you say, Your Honor, to criticize the gross negligence standard as not being sufficient under that mid-level. And then Sanford actually says what you need is not only a substantial risk of harm but a great risk of harm because this Court considered the gross negligence term too poorly defined or too vague. So if a person sees a lane violation, calls the police in the next town or borough, and then gets on the road to chase down that person, there's obviously some deliberation. What is the test that we should apply here? Well, Your Honor, in Sanford this Court didn't decide that question. It was a week-long deliberation. I'm asking you a question. What is the test? Your Honor, I believe that if you're asking under Prong 1, I believe that Sacramento v. Lewis is controlling, and this Court lacks the ability to limit it. The fundamental holding of Sacramento v. Lewis, the end-day holding for that specific case, was that pursuit cases you need an intent to harm, that recklessness is not enough. How can we go there? That isn't even on appeal. Well, you're saying, well, we would win on Prong 1, but right now the only thing in front of us is clearly established, Prong 2, right? Your Honor, I thought Judge Ambrose was asking me which constitutional standard I believe applies. So I took that as a Prong 1 question, Your Honor. The holding that I think this Court should have is just simply that it wasn't clearly established in March of 2014 or May of 2014 that Sacramento v. Lewis has an exception for pursuit cases when there's time to deliberate. Okay. Thank you very much. Thank you. Captain. Good morning, Your Honor. If it will please the Court. First of all, I would like to point out that the Fagan case was prior to the Lewis case. So to the extent anything was modified with Fagan, I'm not asking this Court, or the plaintiffs in this underlying case, I'm not asking this Court to try to overturn Fagan. If Fagan was overruled by any action, it was by the Supreme Court in Lewis, which postdates Fagan. And in Lewis, the Court set out different criteria. That was a high-speed pursuit case. So it's not like that's like a Sanford case, which involves a situation with a prison activity or how they treated an inmate. So Lewis is a pursuit case. In Lewis, they set forth a three-tier analysis. True, in the Lewis case, they said in this particular case, you have police officers engaged in a high-speed pursuit where it was an immediate situation. They observe these boys on the motorcycles. They start chasing them. They are fleeing them. It's a clear first level. When you are the fleeing individuals alleging that your constitutional right has been deprived by the action of the police officers, you've got to prove they intended to do that. But the Court goes much further than that in Lewis, and they say, that's the analysis when you were the fleeing person from the police officers. But there are other scenarios that they contemplated in Lewis. And this is one of those other scenarios. Where in Lewis does it say or even imply? Let's get away from clearly established for a minute and just say where in Lewis does it imply that in a pursuit case, you could have officer liability for an accident? Well, it specifically states in Lewis, in contrast, when more time for deliberation is available, the culpability standard is lower. So they didn't say in every pursuit case, this is the standard. They were talking about, at least the way I read it, there may be other pursuit cases where the standard is lower. So I think that they contemplated that by the analysis they gave with the three different tiers. They were talking about a pursuit case in Lewis. Why were they talking about these other standards if they weren't talking about the possibility of those other standards applying in pursuit cases? Can you help us out with the circumstances where, and Mr. Autry's run through this, that there are cases, multiple cases from other circuits, which are pursuit cases where the courts have said, in effect, either no constitutional violation or not clearly established? Well, with regard to the constitutional violation, I would argue that those cases that are relied upon by the appellants in this situation were clear pursuit cases where there was an actual person that the police officer wasn't in active chase over. In our case, that's not alleged in the complaint, and that's not what happened here. As alleged in the complaint, this person who committed this alleged summary offense, and then, by the way, there was no other basis for this officer to pursue that person. What was the summary offense? He alleged, well, the summary offense, I believe, as we alleged in the complaint, was an illegal left-hand turn. So, Officer Fomenko is going one direction up Route 903, away from Jim Thorpe, back towards Mescajone Borough. This person made what he perceived to be an illegal left-hand turn, heading now down towards Jim Thorpe Borough. But he's got to turn around before he can pursue this person. He has to go up the road, turns around. Somewhere during that process, he also radios ahead to Jim Thorpe Borough to say, hey, there's a yellow neon coming, pull that person over. So, that yellow neon, as alleged in the complaint, does get to Jim Thorpe Borough, does get pulled over by the Jim Thorpe Borough Police. She says, what did I do? They said, we don't know, and they let her go. She never even knew she was being pursued. That is a major factual distinction that Judge Mundy relies upon in his decision. Does that matter, really? Does it matter whether the person knows they're being pursued? Well, yes, because in that scenario, this person is now fleeing from the police, not in our scenario. In the other scenarios where it's a pursuit, that person is causing a public danger by fleeing. Well, sure, but that is a circumstance where the fleeing person is creating a public danger. But that doesn't depend on their knowing something, right? I mean, you could imagine a circumstance where somebody is driving recklessly down the road because they're getting away from something bad they did. They don't know that they're being followed, but they're being followed, right? The subjective understanding that I'm being chased is not what makes the behavior of the driver necessarily culpable and something that would prompt a police officer to want to chase, is it? You don't have to know, oh, I'm being chased in order to be driving badly, correct? Well, I would agree with that point, Judge. Okay, so it doesn't, I guess when you say that's a major point, I'm having a hard time understanding why that matters at all. The fact that she knew or didn't know, if she'd done something heinous, assume she did something heinous and didn't know she was being pursued, would that, the fact she didn't know she was being pursued, suddenly make Officer Jomanko's behavior more culpable, worse, more conscious, shocking? Well, I think what this does is it points to the mindset of Officer Jomanko. I'm not really relying upon the mindset of the person in the neon. Well, because just a minute ago I thought you said you were. Well, what I'm saying, I'm saying that that person, okay, that person, I did say that that person did not know they were being pursued. To show that there was not a pursuit. Well, there's clearly some pursuit going on, right? Because there's 110 miles an hour. But not in a pursuit in the sense of other cases where the courts have said, if you're the person fleeing the police in that pursuit, so the officer is pursuing, but in all those cases, the person who they are pursuing is actively fleeing. Whether you know or not, it's still a high speed chase, right? Only from the perspective of the police officer, which is what makes it more outrageous. Well, from your perspective and my perspective, a police car going 110 miles per hour is presumed to be a high speed chase. It's a high speed pursuit that is shocking of the consciousness under the factual scenario presented here. Now, to have the shocking of the consciousness is part of what you need for state-created danger, correct? That's one of the elements. Which stated in the appeal, but yes. And so how do you distinguish the Davis case that we have from 1999, which applied Lewis v. Sacramento to a high speed chase that harmed a bystander and concluded that law enforcement's actions did not shock the conscience? And remember that shock to conscience is an element of state-created danger. Davis is at 190 F3rd 167th. I'm looking at my briefer right now, Judge. Well, in the Davis case, though, again, I think the difference is here, we don't have a pursuit where the person is fleeing the police officer. So I think that's a major distinction. I think it's back to what Judge Jordan said. It doesn't make any difference whether the person knows she's being pursued or not. It certainly helps with regard to any question about her culpability later on. So somebody said, hey, you were going 110 miles an hour, but this is a police officer in a high speed pursuit. I call it a high speed chase. You call it a high speed pursuit. Same thing. And Davis appears to have applied Lewis v. Sacramento to a high speed chase that harms a bystander, a third party, and concludes that law enforcement's actions did not shock the conscience. Well, again, these are all very factual, specific cases, and that's why I'm saying I believe the facts in Davis are different. Because of the fact it was an active pursuit, they gave them the benefit of the doubt under the Lewis analysis because under the Lewis analysis, I believe it was determined in Davis, it fell into the first tier, the upper tier, the tier that you have to prove intentional conduct when it was a split-second reaction. And the point that I'm making is not that there isn't a very significant amount of sympathy, empathy for the plaintiffs here. Someone got killed. I understand. But how can we say that this was a, what Officer Emengo did was a violation of a clearly established constitutional right? Because when you apply the standard that the Supreme Court set forth in Lewis, the only way that anyone could ever be held culpable in a high-speed pursuit case would be if the officers intended to cause them harm. That was the dissent in Lewis. Why would that be an inaccurate or illogical way to approach the Constitution of the United States when you say the only way they could be held culpable? That's not right. Because, in fact, there are state law claims for negligence, right? Culpable for civil rights violations. Right. Very different. It's not that your client is without remedy. It's that their remedy is state law tort remedy and not a constitutionalizing of all torts that might be problematic and cause liability under state law. And that could have been the conclusion of the Supreme Court, but that wasn't their conclusion in Lewis. They specifically said in Lewis, two justices in Lewis said that should be the standard. That there's state law remedies and the only way you can federalize a pursuit case is if you can show that the officer intended to commit harm. That was the dissent of Judge Thomas and Judge Scalia. But that's not the analysis of the majority in Lewis. The analysis of the majority in Lewis is the three-tier analysis. One, if you're actively fleeing them, you have to prove that they intended to harm you. If you're not that person and the officer had time to deliberate what they were doing, which is what we allege here, then you go down to the gross negligence or recklessness standard. And I would argue that you're conscious. Where in Lewis does it say that? Because if Lewis really did say that, then we would be dealing with something clearly established, right? But Lewis doesn't say you go to the next tier and that's grossly negligent and that's good enough to get you. It doesn't say that, does it? I believe it does. My read of it is that it says that, Your Honor. First they talk about rising to the level of conduct intended to injure in some way is unjustifiable by any government interest. So that's the first tier in Lewis. Then they still want to say, well, as applied by the Third Circuit in Revirus in 2004, there the Third Circuit held that there's a legitimate high speed chase where the decision is made in haste, under pressure, without the luxury of a second chance. Again, only in the intent to harm standard applies. But then in the Revirus case versus City of Passaic, the Third Circuit goes on to say, in contrast, where more time for deliberation is available, the culpability standard is lower. At the lowest end of the culpability spectrum, where the defendant had the opportunity to deliberate about his decision, only deliberate indifference must be proven to show conscious, shocking behavior. That's recognizing what we've said, which is the more time you have to deliberate, that goes into the mix. But Lewis, no place says if you've got gross negligence and you've got time to deliberate, then in a pursuit case, that's going to be enough. Because if it had been that clear, then your component would have a hard time saying not clearly established. It's the fact that you're drawing inferences from what the Supreme Court said, right? Well, I'm quoting this court in Barreras, which was interpreting Lewis. So I'm not trying to draw inferences, Your Honor. I'm not trying to be disrespectful. This is not coming from Holt Clough here. I base my complaint that I filed in this case upon the Lewis and its progeny as established by this court of subsequent decisions. Was Officer Jimenko entitled to statutory immunity in state law toward claims? I don't believe so, Your Honor. That was not raised. Okay. But the only thing that was raised in this appeal, and again, some of the questions asked of opposing counsel, was the only issue was qualified immunity. So they didn't really argue that there was a deprivation of the constitutional standard, and I think that's important in this particular appeal. Well, in this appeal, and I think Mr. Audrey has agreed with this, we're not talking about the constitutional law. We're taking that as a given. If there was a constitutional law, we're going to accept that for purposes of discussion. And the only question we're going to be asking and dealing with here is, was that clearly established in the law in 2014 when this happened? So in Green v. Post, the Tenth Circuit looks at the law and says, you know, we surveyed the law. We think this is not clearly established. Has anything happened in the law since Green v. Post that somebody could look at and say, well, it wasn't clearly established then, but it sure is now? But again, I think my argument to Your Honor is that these are very fact-specific cases. Green did not involve a case with these types of egregious facts. Yeah, and we're not – I'm accepting for purposes of this discussion that there was a constitutional violation, that the behavior was conscious shocking. That's not the question that's on appeal. The only question on appeal is, is that constitutional violation one that somebody, given the state of the law in 2014, would have said, well, that's clear. It's absolutely clear in the law that that was a constitutional violation. So that's the only question in front of us. And the Tenth Circuit had looked at this kind of a case and said, it's not clearly established. What has happened since Green v. Post that would make the law clearly established? What I would say in this case, Your Honor, I'm not going to say that I can point to a different Tenth Circuit case or – The point – the Green v. Post said as of June 2006, that was the date of the accident there, there was no general consensus of cases that would have let the police officer know that his conduct in speeding through an intersection with a yellow light in pursuit of a reported gas thief, but not responding to an emergency, without his license siren on, would violate the substantive due process rights of the plaintiff bystander, absent an intent or purpose to harm. So in the eight-year interim between 06 and 14, what happened? Well, say it happened here, and in that case there were no criminal charges filed against the police officer. If this police officer truly believed that he knew or didn't think that there was some clearly established right that he violated, why is he plain guilty to criminal conduct? I'm sorry, but that doesn't seem to me responsive to the question. The question isn't whether he's in fact guilty of a criminal offense. The question is whether in the law it's clearly established that there's a substantive due process right to be free of the consequences of police behavior. And I still have to point back to this Court's holding in Maranus on that issue, and that is the three different tiers of analysis that occur here. When did that come out? 2004. Right. Pre-Green v. Post. I'm just trying to find out one thing. There is a circuit court which has looked at this very kind of case and said there's no consensus, it's not clearly established. And then try to find out whether you can point to something after Green v. Post which would tell an officer, well, it wasn't clearly established pre-2006, but since 2006 look at these cases that have come out that tell you clearly established. And what you're telling me is you can't point to something like that, but somebody should know it anyway. Okay, say that, but if you can point to something, I'd like to know it, because I didn't see it in the briefing, but I would like to know it. Mike, again, Your Honor, I'm not trying to be evasive. I don't have another case that I can point specifically to other than the cases that I've relied upon from the Third Circuit, which we believe establishes, at least within this circuit, that this type of conduct not only shocks the consciousness, but a reasonable police officer should know that you don't go chasing a car that maybe made a wrong left-hand turn at speeds of 100 miles per hour without jeopardizing the public and potentially causing the type of situation that occurred here. The issue really for all of this is what is a reasonable officer going to do? A reasonable officer is ordinary negligence. I'm sorry? A reasonable officer violating a norm, that would be ordinary negligence. I mean, that's what reasonableness is about. Here the question might be whether it has to be grossly negligent or reckless, and clearly intent might work. But the question – I'm at the second problem. What has happened? If the Tenth Circuit was correct with respect to the state of the law in 2006, it wasn't clearly established, then did anything change between 06 and 14? Presumably they're correct. I don't have a specific case to point to. I don't agree that they were correct, and that was a different circuit, and that's why I looked at the circuit court decisions in this circuit as to that issue, as to whether or not – Well, then you run into the problem with Fagan and Davis. Well, I don't believe that they're a problem. Fagan was prior to Lewis. Lewis established a three-tier analysis. Okay. I think we're beating a dead horse. Anything further you want to say to sum up? No, I'm done. Okay. Thank you. Just three quick points, Your Honor, and obviously any questions you may have. The plaintiffs started their argument by saying this isn't a pursuit case. I would direct this court to the plaintiff's complaint, paragraph 14, that states, and I quote, Stephen Homenko engaged in a high-speed pursuit of the yellow Dodge Neon. He later said it was a high-speed pursuit. And then for the Supreme Court decision in Lewis, the plaintiff's counsel was asked about the specific standard that was announced, like what was the actual holding in Lewis. And I will quote from the Lewis decision, just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, and this is the part that we rely on, so it ought to be needed for due process liability in a pursuit case. Well, that assumes, right, you've got to unpack the word pursuit. I mean, that's the problem I'm having as I deal with this case, is what exactly does pursuit mean? You assume, and your argument seems to hinge, Mr. Autry, on the idea that all pursuits are created equal. And doesn't Lewis, in fact, undermine that very assertion? Because, as your opposing counsel has pointed out, Lewis itself recognizes, looking at our case law, that the more time there is to deliberate, the lower the threshold for constitutional liability becomes because it's easier to shock the conscience if somebody does something really stupid after they've had time to think about it. The longer they've got to think about it, the more outrageous it becomes that they then do the thing that causes the problem. Lewis itself recognizes that, doesn't it? Your Honor, it does. And it talks about both specific facts that dealt with that pursuit at issue, which is what the plaintiff wants to rely on to say these facts are different from those, but it also talks about categorical differences between pursuits as a whole and the custodial context where it talked about the lower standard. And for pursuits as a whole, it talked about how you don't have the opportunity for a repeated review of the issue, that deliberation doesn't take place over a long period of time, like years. So all pursuits aren't created equal. That's a key thing, isn't it? You seem to want to say pursuit means all pursuit, any high-speed pursuit, any high-speed chase is Lewis. And Lewis itself seems to indicate that's not so. Of course, there's a lot, Your Honor, and I agree with that. But under Lewis, the holding, the fundamental holding at the end of the day, it is that pursuits go under the intent of harm. And if this Court wants to say that because of the specific facts of this pursuit, it doesn't fall under Lewis, again, that would go to Problem 1. But we're talking about Problem 2. That holding has not come from this Court yet, as this Court pointed out and as you pointed out, Your Honor, the Green Coat v. Post decision from the Tenth Circuit, there's a number of decisions from other circuits that have not just handled qualified immunity but have actually handled the standard and have talked about similar circumstances. And if this Court wants to reach a different conclusion than those courts, under the Supreme Court precedent of qualified immunity, the law was not clearly established before this Court chooses to do so. Thank you very much. Thank you. Thank you to both counsel for well-presented arguments. We'll take the matter into reprisement.